**Reversed and Remanded and Opinion Filed August 1, 2022**

# S

**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-21-00174-CV**

**WEI SHAO HEIRONIMUS, DERIVATIVELY ON BEHALF OF MID-AMERICAN SUPPLY CORP., Appellant**
**V.**
**XIAOSHA TIAN, Appellee**

**On Appeal from the 162nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-19-16583**

## MEMORANDUM OPINION

Before Justices Partida-Kipness, Pedersen, III, and Nowell
Opinion by Justice Nowell

Wei Shao Heironimus, derivatively on behalf of Mid-American Supply Corp.,

appeals from the trial court's order granting Xiaosha Tian's plea to the jurisdiction

and dismissing her case. In two issues, appellant argues the trial court erred by

granting the plea to the jurisdiction despite the existence of a fact issue and the trial

court abused its discretion by excluding testimony from her translators. Appellee

raises several issues in response, including that the record is incomplete and a

complete record is required for review of appellant's complaints. We reverse the trial

court's order granting the plea to the jurisdiction and remand this case to the trial court for further proceedings.

## BACKGROUND

Appellant's original petition alleges she is the minority shareholder of Mid-American, and her former husband, appellee, is the majority shareholder who owns a 65 percent interest in Mid-American. Mid-American owned several Chinese subsidiaries, and all profits generated by these subsidiaries were to flow back to Mid-American. She alleges appellee began diverting profits from one of Mid-American's subsidiaries to his own wholly owned entity. Appellant brought derivative claims on behalf of Mid-American for breach of fiduciary duty, conversion, violations of the Texas Theft Liability Act, and money had and received.

Appellee filed a plea to the jurisdiction arguing appellant lacks standing to assert claims derivatively on behalf of Mid-American because she owns no interest in the entity. Appellee's motion states that appellant and appellee entered into an agreement written in Mandarin whereby appellant assigned all of her interest in Mid-American to him to secure a $4 million loan (the Loan Agreement), and, when appellant failed to repay the loan, her shares were assigned to appellee. Accordingly, any right to assert claims on behalf of Mid-American now rests with appellee.

Appellant responded and argued, among other things, that the Loan Agreement's assignment states that, in the event of default, she assigned 35 percent of her Mid-American shares rather than all of her shares; the Loan Agreement did

not divest appellant of standing to file a derivative suit because she retained shares of Mid-Atlantic. Appellant's response includes her own declaration, which states that "the share pledge portion of the Loan Agreement only seeks to assign 35 percent of my Mid-American shares." Several documents are attached to appellant's declaration: (1) the Loan Agreement written in Mandarin, (2) an English translation of the Loan Agreement, and (3) a declaration of Qi Cheng who states he translated the Loan Agreement into English.[1] Appellant did not draft the English translation attached to her declaration; it is unknown who drafted the translation attached to appellant's declaration.

Appellant's response to the plea to the jurisdiction also includes a declaration from Xiaolin Zhou. Zhou was born in China, obtained his undergraduate degree in China, graduated from Harvard Law School, and is a partner in a law firm in New York. His declaration states in part: "I have read the Subject Loan Agreement both in its original Mandarin language and the certified English translation. A plain reading of the Subject Loan Agreement transfers only 35% of the Borrower's shares," assuming the Loan Agreement is enforceable.

---

[1] The record shows and it is uncontested that Qi Cheng's declaration and translation were not properly submitted as part of appellant's response to the plea to the jurisdiction. After submitting Qi Cheng's declaration, appellant's lawyers learned that Qi Cheng may not have performed any translation in this case. Additionally, Qi Cheng never appeared to testify before the trial court. Appellant's reply brief concedes: "We don't know who performed the translation attached to Qi Cheng's declaration. It may have been Qi Cheng; it may not." The reply brief continues: "Wei withdrew her reliance on Qi Cheng's affidavit."

In his reply to appellant's response, appellee provided his own declaration in which he states he owns 100 percent of the shares of Mid-American. His declaration states that, in late 2013, he and appellant decided they did not want to continue being in business together. In 2014, appellant decided to open her own business called HaiDe'er (Tianjin) Technology Development Company (HaiDe'er). To start her company, appellant wanted to borrow 30 million Chinese Yuan, which was worth approximately $4.8 million. The parties entered into the Loan Agreement in which HaiDe'er would receive the money, and, at appellant's option, appellant could treat the money as either a loan to HaiDe'er or as a redemption/purchase price for all of her stock in Mid-American. Appellee's declaration states that, when appellant did not repay the loan by the agreed-upon deadline, appellee "made an election to treat the payment to her as payment for the redemption or purchase of her shares. I am the owner of 100% of the shares of Mid-American." Appellant "does not own any shares in Mid-American." Appellee further declares that the Loan Agreement "does not say that Heironimus agrees to transfer 35% of her shares in Mid-American. There was never any thought or discussion that Heironimus would transfer less than all of her shares to me. Through [the Loan Agreement] Heironimus assigned her entire 35% share in Mid-American to me."

Appellee also provided a declaration from a translator named Jiayin Jenny Zheng. Zheng's declaration provides her qualifications as a translator. A written copy of her translation is attached to her declaration. After reading the Loan

Agreement, Zheng concluded appellant pledged all of her equity in Mid-American as collateral and transferred her entire share.

The trial court held a hearing on the plea to the jurisdiction; the hearing took place on multiple days over the course of several months. One of the hearings was on August 13, 2020. Zheng testified on August 13, and her testimony was consistent with her declaration. Although appellant previously provided a declaration from Qi Cheng and a translation of the Loan Agreement purportedly from Qi Cheng, Qi Cheng did not appear at the hearing. Rather, appellant sought to present a new expert witness, Daniella Peng, at the hearing.

During the August 13 hearing, the trial court judge stated she wanted to ask Qi Cheng questions about his translation. She stated: "That's what I intended by this continuation of the hearing. . . . Maybe I wasn't clear. I wanted to know from him, did you translate the same document [appellee] translated." After some additional conversation, appellant's counsel volunteered to have "our translator speak today, who's reviewed the translation and can provide the Court with that testimony." The judge asked why Cheng was not testifying and appellant's counsel responded that Cheng was not available and counsel "thought that it would not be an issue at all" to have a different translator testify. The judge replied that having a different translator testify "is an issue because it's [Cheng's] declaration that's on trial here . . . I'm going to say it's the fault of the Court. I perhaps did not make myself clear as to why I wanted to have the continuation of this hearing. There were objections to the

evidence. The Court intended to admit the evidence and say get these two people before the Court under oath and let the Court hear from them."

The judge did not allow Peng to testify because she concluded Peng's testimony was "not relevant. That's - - you know, the translator that's being presented by the Plaintiff has not filed anything that the Court is looking at to see if there's a fact dispute." Appellant's counsel explained that because Cheng was not available, counsel found someone else from the same translation company who could testify. If the court wanted to hear from Cheng, then appellant needed to continue the hearing until a time when Cheng was available. When appellant offered to have Peng provide a translation as an alternative to Cheng, the judge stated she did not want to hear from Peng. The judge only wanted to consider the translations from Cheng and Zheng. The trial court continued the hearing again.

The trial court subsequently granted the plea to the jurisdiction without considering any evidence from Peng. This appeal followed.

### MISSING RECORD

We first must determine whether we have an adequate record upon which to resolve this appeal. In his brief, appellee argues appellant waived appellate relief by failing to provide a record from hearings on April 21, 2020 and August 20, 2020.[2]

"Our appellate rules are designed to resolve appeals on the merits, and we must interpret and apply them whenever possible to achieve that aim." *Michiana*

---

[2] Appellant's request for preparation of reporter's record recites that hearings were held on these dates.

*Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784 (Tex. 2005). To that end, appellate courts presume that pretrial hearings are non-evidentiary, and the trial court considered only the evidence filed with the clerk. *Id.* at 783. "A reporter's record is necessary only for evidentiary hearings; 'for nonevidentiary hearings, it is superfluous.'" *Crawford v. XTO Energy, Inc.*, 509 S.W.3d 906, 910 (Tex. 2017) (quoting *Holten*, 168 S.W.3d at 782). "If all the evidence is filed with the clerk and only arguments by counsel are presented in open court, the appeal should be decided on the clerk's record alone." *Holten*, 168 S.W.3d at 782.

If "the proceeding's nature, the trial court's order, the party's briefs, or other indications show that an evidentiary hearing took place in open court, then a complaining party must present a record of that hearing to establish harmful error." *Id.* at 783. When a party alleges that a hearing was evidentiary, that allegation must be specific. *Id.* "Merely asserting that the trial court 'considered evidence at the hearing' is not enough—trial courts do that when a hearing is conducted entirely on paper, or based solely on affidavits and exhibits filed beforehand. Instead, there must be a specific indication that exhibits or testimony was presented in open court *beyond* that filed with the clerk." *Id.*

We begin with the presumption that the April 21, 2020 and August 20, 2020 hearings were non-evidentiary and the trial court only considered evidence filed with the clerk. *See Constant v. Gillespie*, No. 05-20-00734-CV, 2022 WL 1564555, at *8 (Tex. App.—Dallas May 18, 2022, no pet. h.) (mem. op.); (citing *Holten*, 168

S.W.3d at 783). In his brief, appellee states that on April 21 the trial court heard evidence and appellant's counsel, Joshua Sandler, "testified during the proceedings on April 21, 2020[,] expanding on the facts in his declaration." A declaration from Sandler is attached to "Plaintiff Mid-American Supply Corp.'s Objections to Evidence Proffered in Defendant's Plea to the Jurisdiction Reply Brief and Sur Reply." In that declaration, Sandler explains the circumstances surrounding appellant obtaining the declaration of Qi Cheng.

Although appellee's brief states Sandler testified on April 21, during oral argument for this appeal, appellee's counsel clarified for this Court that Sandler was not placed under oath during the hearing. Rather, he engaged in a question-and-answer exchange with the trial court judge. While the requirement may be waived, "an attorney's statements must be made under oath to be considered evidence." *Ugwa v. Ugwa*, No. 05-17-00633-CV, 2018 WL 2715437, at *3 (Tex. App.—Dallas June 6, 2018, no pet.) (mem. op.) (quoting *Banda v. Garcia*, 955 S.W.2d 270, 272 (Tex. 1997) (per curiam)). Here, no one contends the oath requirement was waived and so we presume any statements made by Sandler to the trial court were not evidence. *See id.* Appellee does not provide any other specific allegations that the trial court heard evidence on April 21. However, transcripts in the record from subsequent hearings indicate the trial court considered affidavits and declarations on April 21. We conclude the record does not indicate the trial court considered evidence beyond documents filed in the clerk's record on April 21, 2020.

Appellee also asserts the trial court held an evidentiary hearing on August 20, 2020, at which appellant presented evidence to show good cause for her failure to submit a timely translation of the Loan Agreement; appellee does not specify what evidence allegedly was presented. We consider appellee's assertion that appellant presented evidence at the August 20 hearing to be similar to the argument the supreme court rejected in *Michiana*. The supreme court stated that an allegation that the trial court considered evidence is not sufficient and does not meet appellee's burden. *See Holten*, 168 S.W.3d at 783.

We conclude appellee has not overcome the presumption that the pretrial hearings on the plea to the jurisdiction were non-evidentiary and the trial court considered only the evidence filed with the clerk. *See Constant*, 2022 WL 1564555, at *8 (citing *Holten*, 168 S.W.3d at 783). Accordingly, we conclude that appellant brought forth an adequate appellate record on which we can resolve this appeal on its merits and consider the substantive issues raised. *See Holten*, 168 S.W.3d at 784.

PLEA TO THE JURISDICTION

A. **Standard of Review**

A plea to the jurisdiction "may challenge the pleadings, the existence of jurisdictional facts, or both." *Tex. Dep't of Criminal Justice v. Rangel*, 595 S.W.3d 198, 205 (Tex. 2020) (quoting *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018)). If a plea "challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to

hear the cause." *Id.* (quoting *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004)). But when a plea to the jurisdiction challenges the existence of jurisdictional facts, we look beyond the pleadings and consider evidence submitted by the parties "when necessary to resolve the jurisdictional issues raised," even if the evidence implicates both the court's jurisdiction and the merits of a claim. *Id.* (quoting *Miranda*, 133 S.W.3d at 227); *see also see also The Univ. of Tex. at Austin v. Hayes*, 327 S.W.3d 113, 116 (Tex. 2010) ("When a plea to the jurisdiction challenges the existence of jurisdictional facts, the trial court must review the relevant evidence to determine whether a fact issue exists"). For a plea that challenges the existence of jurisdictional facts, our standard of review generally mirrors that of a traditional summary judgment: a plaintiff must raise a genuine issue of material fact to overcome the challenge to the trial court's jurisdiction. *Rangel*, 595 S.W.3d at 205. When determining whether the plaintiff has met that burden, "we take as true all evidence favorable to" the plaintiff and "indulge every reasonable inference and resolve any doubts in the [plaintiff's] favor." *Id.* (quoting *Miranda*, 133 S.W.3d at 228). If the evidence and allegations create a fact question regarding jurisdiction, then a court cannot grant a plea to the jurisdiction, and the factfinder must resolve the fact issue. *Id.* But "if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue," a court rules "on the plea to the jurisdiction as a matter of law." *Id.*

In this case, the plea to the jurisdiction challenges the existence of jurisdictional facts.

### B. Peng's Excluded Testimony

On August 10, 2020, appellant filed "Plaintiff's Supplemental Briefing in Opposition to Defendant's Plea to the Jurisdiction," which states: "As requested by the Court, Ms. Heironimus designates Daniella Peng as Plaintiff's witness to testify on the translation of the Loan Agreement." Peng attended the August 13 hearing.[3] Counsel for appellant informed the trial court that Peng worked for the same translation company as Cheng and her "translation is going to be the same" as Cheng's translation. The trial judge stated she did not want to hear from a new translator; she wanted to hear from Cheng. The judge stated Peng's testimony was not relevant to the plea to the jurisdiction proceedings, and Peng was not permitted to testify. Relevance was the only ground the judge provided for excluding Peng's testimony.[4]

The trial court's determination that Peng's testimony was not relevant is in error. Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action. TEX. R. EVID. 401. Peng's testimony regarding the correct translation of

---

[3] The record indicates the August 13 hearing was held via Zoom.

[4] Appellee argues the trial court "closed the evidence" during the April 21 hearing. However, when appellant offered Peng as a witness, appellee did not object to her testimony on the basis that evidence had been closed, and the trial court did not exclude her testimony on that basis. We limit our consideration of the judge's exclusion of the testimony to the ground presented at the hearing.

–11–

the Loan Agreement was relevant to determining whether appellant retains any ownership of Mid-American because whether appellant has standing to derivatively pursue her claims is dependent upon whether she retains any interest in Mid-American. When, as here, the plea to the jurisdiction challenges the existence of jurisdictional facts, the trial court "must review the relevant evidence to determine whether a fact issue exists." The trial court failed to do so when it did not consider Peng's testimony even though appellant designated Peng as her expert and made her available to testify at the August 13 hearing.[5] *See Hayes*, 327 S.W.3d at 116 ("When a plea to the jurisdiction challenges the existence of jurisdictional facts, the trial court must review the relevant evidence to determine whether a fact issue exists."). By not doing so, the trial court abused its discretion.

We do not reverse a judgment unless the trial court's erroneous exclusion of evidence "probably caused the rendition of an improper judgment." TEX. R. APP. P. 44.1(a)(1). The central issue to resolve the plea to the jurisdiction in this case was whether appellant retained any interest in Mid-American. But the trial court judge failed to consider evidence from Peng regarding that issue. If Peng had testified that appellant continued owning an interest in Mid-American, her testimony may have created a fact issue, precluding the trial court from granting the plea to the

---

[5] Appellee argues that Peng was not credible or reliable and, therefore, her testimony about the Loan Agreement was not admissible and could not have raised a fact question. We make no comment about whether Peng was credible or reliable. Our determination is limited to whether Peng's testimony about the Loan Agreement was relevant.

jurisdiction. On this record, we conclude the trial court's error probably caused the rendition of an improper judgment.

Because the trial court erred by determining Peng's testimony was not relevant to the plea to the jurisdiction proceedings, we reverse the trial court's order and remand the cause to the trial court. We sustain appellant's second issue.

CONCLUSION

In light of our resolution of appellant's second issue, we need not consider her first issue or whether the trial court erred by excluding evidence from David Kamen. *See* TEX. R. APP. P. 47.1.

We reverse the trial court's order granting the plea to the jurisdiction and remand this cause to the trial court for further proceedings.

210174f.p05

/Erin A. Nowell//
ERIN A. NOWELL
JUSTICE

# S

## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

WEI SHAO HEIRONIMUS,
DERIVATIVELY ON BEHALF OF
MID-AMERICAN SUPPLY CORP.,
Appellant

No. 05-21-00174-CV         V.

XIAOSHA TIAN, Appellee

On Appeal from the 162nd Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-19-16583.
Opinion delivered by Justice Nowell.
Justices Partida-Kipness and
Pedersen, III participating.

In accordance with this Court's opinion of this date, the order of the trial court granting appellee's plea to the jurisdiction is **REVERSED** and this cause is **REMANDED** to the trial court for further proceedings.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 1st day of August, 2022.